IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TROXLER ELECTRONIC LABORATORIES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | )     1:05CV00052 ) |
| STEVEN JAMES, | ) ) |
| Defendant. | ) |

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

In this lawsuit, Plaintiff, Troxler Electronic Laboratories, Inc. ("Troxler" or "Plaintiff") asserts state law claims arising from former employee Steven James' ("James" or "Defendant") alleged breach of an employment agreement. Presently before the Court are James' motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue (Pleading No. 11), and/or Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (Pleading No. 9). Both of the motions have been fully briefed and, on September 26, 2005, the Court heard oral argument of counsel on the motions. Defendant maintains that the United States District Court for the Middle District of North Carolina is an improper venue and that Plaintiff fails to state a claim for relief under Colorado law. For reasons set forth below, the Court finds that the motion to dismiss

for lack of venue should be denied and the motion to dismiss for failure to state a claim should be granted in part.

Background

Troxler is a North Carolina corporation that manufactures and services engineering-related instruments, and has its principal place of business in Durham County, North Carolina. (Pleading No. 1, Compl. ¶ 1.) Troxler employed James as a technician in its Colorado branch between October 29, 2001 and July 16, 2004. *Id.* ¶ 4. James lived and worked in Colorado for the entire period of his employment. *Id.* ¶ 2, Ex. 1.

On June 7, 2004, Troxler advised James that it planned to close its Colorado office. Troxler offered James the option of relocating to Texas or resigning and accepting a four-week salary bonus in exchange for agreeing to certain conditions. *Id.* The conditions were contained in a "Stay Letter" dated June 16, 2004 and sent to James in Colorado for his consideration.[1] In consideration of a bonus equivalent to four weeks of base salary, James signed the Stay Letter in Colorado on June 28, 2004. *Id.*, Ex. 1, ¶ 5. On July 8, 2004, Troxler's Human Resources Manager co-signed the Stay Letter in Durham County, North Carolina. Under the terms of the Stay Letter, the agreement would "be complete" upon co-signing by the Troxler Human Resources Director. *Id.*, Ex. 1.

---

[1]The Stay Letter is attached to Plaintiff's Verified Complaint and therefore may be considered by the Court in connection with this motion to dismiss.

2

Under the Stay Letter, James agreed, among other things, not to engage in the business of manufacturing precision quality control and measurement equipment competitive with Troxler within the geographic area in which he served or a 150-mile radius of the Denver office and not to accept the business of any client he served in the year prior to his termination. *Id*. He further agreed not to solicit or do business with clients with whom Troxler did business in the year preceding his termination, induce such clients to cease doing business with Troxler or otherwise change the terms of their relationship with Troxler. *Id*. He further agreed not to solicit Troxler employees or disclose certain information obtained during his employment. *Id*. Under the terms of the Stay Letter, James is bound by these restrictions for two years following the date his employment ends, North Carolina is the forum for disputes and North Carolina is the source of law for interpreting the agreement. *Id*.

In August, 2004, James entered into employment with OSCS, Inc., an alleged competitor of Troxler. *Id.* ¶ 11. On January 18, 2005, Troxler filed this lawsuit, asserting claims under North Carolina law for breach of contract, tortious interference with Troxler's business relationships in North Carolina and elsewhere and unfair and deceptive trade practices.

Discussion

I. Venue

The initial determination for the Court is whether venue properly lies in this district. Defendant has moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue.

The parties' agreement contains a forum selection clause. In Paragraph 12 of the Stay Letter, Plaintiff and Defendant agree that either the United States District Court for the Middle District of North Carolina or the Superior Court of Durham County would have sole and exclusive jurisdiction over any claim or cause of action relating to Defendant's employment with or separation from Troxler or to the non-competition agreement. Such a forum selection clause is *prima facie* valid and will be enforced absent a strong showing that it should be set aside. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)*; Mercury Coal & Coke, Inc. v. Mannesmann Pipe & Steel Corp.,* 696 F.2d 315, 317 (4th Cir. 1982); *Perkins v. CCH Computax, Inc.,* 333 N.C. 140, 141, 423 S.E.2d 780, 781 (1992). To overcome a forum selection clause, the party resisting it must show that (1) the party was induced by fraud or overreaching; (2) the party will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the party of a remedy; or (4) enforcement would contravene a strong public policy of the forum state. *See Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595 (1991).

James' brief on the forum selection issue mirrors his brief against application of the choice of law clause, an issue discussed separately below. The Court assumes that the argument made by James is that because Colorado law would invalidate the non-compete agreement, it deprives James of a remedy for this Court even to entertain the matter. The Court finds no basis to set aside the forum selection clause on this or any other ground. Although Defendant may experience some inconvenience by having to litigate in this forum, the inconvenience is not so great as to deprive James of his day in court or divest him of any rights. Neither do the allegations of the Complaint or the exhibit attached to the Complaint suggest fraud or overreaching by Troxler that induced James to agree to litigating matters related to the contract in this forum. James had at least 15 days, and used 12 of them, to consider the terms of the agreement. Troxler is a North Carolina company and had a reasonable basis for asking its employee to agree to litigate disputes in this forum.

In sum, the Court finds that Defendant has made an insufficient showing of circumstances that would justify invalidating the forum selection clause contained in the parties' agreement. Defendant's motion to dismiss for improper venue should be denied.

II.     Rule 12(b)(6), Sufficiency of Claims Related to Non-Compete Agreement

James moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss his former employer's claims on grounds that those claims depend on the validity of the non-compete agreement and that, under Colorado law, such an agreement is void *ab initio*.

5

Plaintiff opposes the motion on grounds that North Carolina law applies and recognizes the validity of reasonable non-compete agreements.

A Rule 12(b)(6) motion to dismiss for failure to state a claim should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). All well-pleaded allegations must be taken as true and construed most favorably to the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, it need not accept as true legal conclusions or unwarranted factual inferences. *Id.* Review is restricted to the allegations of the complaint and any exhibits attached to it. *Id.*

A. Choice of Law

The Court's first task in ruling on the 12(b)(6) motion is to determine what law applies to the parties' dispute. James maintains that under North Carolina choice of law rules, Colorado law applies in spite of the parties' agreement, in Paragraph 12 of the Stay Letter, that North Carolina law applies. According to James, the agreement was executed in Colorado and/or Colorado has the most significant relationship to the contract.[2]

---

[2] James focuses on the choice of law argument as it relates to Troxler's claim for breach of contract but suggests that the other claims (for tortious interference with contractual relations and unfair and deceptive trade practices) are inextricably intertwined with the breach of contract claim and that resolution of one is dispositive of all. The Court disagrees, and will address only the issue fully briefed by the parties: the enforceability of the non-compete provisions of the contract.

Federal courts, sitting in diversity jurisdiction, apply the choice of law rules of the forum in which they are located. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *Silvestri v. General Motors Corp.*, 210 F.3d 240, 243 (4th Cir. 2000). With regard to breach of contract actions, North Carolina follows the Restatement (Second) of Conflict of Laws § 187 ("the Restatement" or "RESTATEMENT"). *Szymczyk v. Signs Now Corp.*, 168 N.C. App. 182, 186, 606 S.E.2d 728, 733 (2005). Section 187 provides that

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of section 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
>
> (3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

RESTATEMENT § 187. Because the issue of whether a covenant not to compete is enforceable is not "one which the parties could have resolved by an explicit provision in their agreement," § 187(1) is inapplicable, and the Court must look to § 187(2).

Under § 187(2), the Court should apply the law chosen by the parties unless § 187(2)(a) or (b) applies.[3] *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 607 (4th Cir. 2004); *UBS Painewebber, Inc. v. Aiken*, 197 F. Supp. 2d 436, 444 (W.D.N.C. 2002) (upholding choice of New York law contained in a non-compete agreement entered into by North Carolina employee upon buyout of company); *Behr v. Behr*, 46 N.C. App. 694, 696, 266 S.E.2d 393, 394 (1980) ("The parties' choice of law is generally binding on the interpreting court as long as they had a reasonable basis for their choice and the law of the chosen State does not violate a fundamental policy of the state of otherwise applicable law.") Subsection (a) of § 187(2) permits the Court to ignore the parties' choice of law when the chosen state lacks a substantial relationship to the parties or transaction and there is no reasonable basis for their choice. Further, even assuming that a substantial relationship exists, subsection (b) allows the Court to ignore the parties' choice where application of the chosen law would violate a fundamental policy of a state with a materially greater interest in the particular issue and the law of which would apply under § 188 of the Restatement.

---

[3] James argues that under the principle of *lex loci contractus,* there is a presumption that a contract is governed by the law of the place where it was made. He further argues that the contract was made in Colorado. However, the parties' choice of the applicable law trumps the *lex loci contractus* presumption, and to the extent that some other principle trumps the choice of law, the Court must look to the Restatement analysis. *See Volvo*, 386 F.3d at 601 (*citing Bueltel v. Lumber Mut. Ins. Co.*, 134 N.C. App. 626, 518 S.E.2d 205, 209 (1999)).

James maintains that pursuant to §187(2)(a) of the Restatement, North Carolina lacks a substantial relationship to the parties or the transaction involved in this case. The Court disagrees. Troxler is a North Carolina corporation with its principal place of business in Durham County, North Carolina. Although James worked in Colorado, he trained for his position in North Carolina, attended meetings at corporate headquarters in North Carolina, communicated with North Carolina employees, provided products and services with the support of the North Carolina office, made client contacts that originated in North Carolina and was paid from the North Carolina office. Based on the allegations contained in the Complaint, which this Court must accept as true for purposes of this motion, the Court finds that North Carolina has a substantial relationship to the parties and that there was a reasonable basis for the parties' designation of North Carolina law as the controlling law.

James further contends that, under § 187(2)(b), the Court should refuse to honor the parties' choice of law for the claim for breach of the non-compete agreement. James urges that applying North Carolina law would violate a fundamental policy of Colorado, which has a materially greater interest in the particular issue and whose law would otherwise apply. To determine whether § 187(2)(b) applies, the court must, as an initial matter, determine whether Colorado passes the significant relationship test of § 188 of the Restatement. To determine whether a state has a significant relationship to a dispute, the court considers several contacts, including: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance of the contract; (d) the location of the subject matter

9

of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. *See* RESTATEMENT § 188.[4] The court evaluates these contacts as they relate to the particular issue before the court -- here, the validity of the non-compete agreement. Section 188 notes that "[i]f the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied." RESTATEMENT § 188(3).

This litigation has connections to North Carolina and Colorado. Troxler is a North Carolina corporation with its principal place of business in North Carolina. James was employed through the North Carolina office, trained in North Carolina, had ongoing dealings with North Carolina personnel and sold and serviced products that originated in North Carolina. On the other hand, James is a Colorado resident who at all times performed his job in Colorado. The subject matter of the relevant agreement is in Colorado: James' new position is in Colorado and the relevant provisions of the Stay Letter primarily restrict competitive activities in Colorado. The parties negotiated the contract primarily in Colorado, by correspondence. The parties dispute where the contract was entered. James argues that he performed the last act necessary for making the contract when he signed it in

---

[4]The "contacts" set forth under § 188 are to be evaluated in light of the general principles contained in section 6 of the Restatement, including (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. RESTATEMENT § 6.

Colorado, while Troxler argues that the last act necessary for making the contract occurred in North Carolina when its Human Resources Director countersigned the Stay Letter. This Court finds that, according to the terms of the Stay Letter, the agreement was not "complete" until signed by Plaintiff's Human Resources Manager in North Carolina. *Cf. Bundy v. Commercial Credit* Co., 200 N.C. 511, 157 S.E. 860, 862 (1931); *Suitt Construction Co. v. Seaman's Bank for Savings*, 30 N.C. App. 155, 159, 226 S.E.2d 408, 411 (1976) (rejecting argument that acceptance occurred when offer was accepted in North Carolina, where by terms of agreement receipt in New York was necessary for agreement to be complete); *Key Motorsports, Inc. v. Speedvision Network*, L.L.C., 40 F. Supp. 2d 344, 347-48 (M.D.N.C. 1999) (documents indicated that defendant did not intend to be bound until it executed the agreement, and therefore, defendant's signature was the last act essential to a meeting of the minds). The parties were free to make the signature by a Troxler representative a condition to the contract's effectiveness, and they did so in this case. *See Federal Reserve Bank of Richmond v. Neuse Mfg. Co.*, 213 N.C. 489, 196 S.E. 848, 849 (1938).

Based on this analysis, and according to § 188(3) of the Restatement, the fact that Colorado was the place where the contract was negotiated and was to be performed suggests that Colorado has the most significant relationship with the contract, absent a choice of law provision. The Court therefore finds that, had the parties not stipulated that North Carolina law would apply, Colorado law would have applied to the issue of the validity of the non-compete agreement.

11

The next question is whether application of the law of the chosen state, North Carolina, would be contrary to a fundamental policy of Colorado. There is no established definition or rule for determining what represents a "fundamental policy." *See* RESTATEMENT § 187 cmt. g; *Volvo,* 386 F.3d at 608. While a court need not refrain from applying the law chosen by the parties simply because doing so would lead to a result different from that reached under the otherwise applicable law, the court must examine the laws of the two states for *significant* differences. *See Barnes Group, Inc. v. C & C Products, Inc.*, 716 F.2d 1023, 1031 (4th Cir. 1983) (emphasis added). In making this case by case determination, the court should consider the language of the relevant statute (including the nature of the penalty for its violation), pertinent legislative history and court decisions. *Id.*

Comparing the two states' laws, North Carolina generally permits non-compete agreements, while Colorado generally views them as void. Section 8-2-113(2) of the Colorado Revised Statute, the State of Colorado's statute addressing non-compete agreements, provides:

> Any covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void, but this subsection (2) shall not apply to (a) Any contract for the purchase and sale of a business or the assets of a business; (b) Any contract for the protection of trade secrets; (c) Any contractual provision providing for recovery of the expense of educating and training an employee who has served an employer for a period of less than two years; and (d) Executive and management personnel and officers and employees who constitute professional staff to executive and management personnel.

Colo. Rev. Stat. Ann. § 8-2-113(2) (1993). Violation of the statute is punishable by criminal fines and/or imprisonment. *Id.* § 8-2-115. Based on this statute, Colorado courts have consistently refused to enforce non-compete agreements except in the listed circumstances. *See Dresser Indus., Inc. v. Sandvick*, 732 F.2d 783 (10th Cir. 1984); *DBA Enters., Inc. v. Findlay*, 923 P.2d 298 (Colo. App. 1996). Colorado courts view the statute as embodying "a fundamental policy" and a "strong public policy" against covenants not to compete. *Nutting v. RAM Southwest, Inc.*, 106 F. Supp. 2d 1121, 1124 (D. Colo. 2000); *Newark Elecs. v. Warnimont*, No. Civ. A. 86F677, 1987 WL 880813 (D. Colo. Feb. 12, 1987) (unpublished). The Fourth Circuit, confronted with a similar factual scenario and choice of law issue, found a state law invalidating non-compete agreements to express a fundamental policy and to trump the parties' choice of law. *Barnes Group*, 716 F.2d at 1032 (refusing to enforce parties' choice of Ohio law where doing so would have violated Alabama's law nullifying covenants not to compete, with regard to salesmen located in Alabama).

Based on this authority, it is this Court's view that Colorado has a materially greater interest than North Carolina in the determination of the issue placed before the court in this motion -- the validity of a non-compete agreement -- and that application of North Carolina law would violate a fundamental policy of Colorado.

    B.  <u>Plaintiff's Claim for Breach of Contract</u>

Having found that Colorado law applies, the Court must determine whether Troxler states a claim against James for breach of contract. This claim is premised on James' alleged

13

breach of the non-compete agreement contained in the Stay Letter. James agreed not to disclose certain company information; not to engage in the business of manufacturing precision quality control and measurement equipment competitive with Troxler within the greater of the geographic area in which he served or a 150-mile radius of the former Denver office; not to solicit or do business with clients with whom Troxler did business in the year preceding James' termination, or induce such clients to cease doing business with Troxler or otherwise change the terms of their relationship with Troxler; and not to accept the business of any client he served in the year preceding termination that is competitive with Troxler.

Under Colorado law, a valid claim for breach of contract requires the pleading of four elements: the existence of a valid and binding contract, the non-breaching party's compliance with the terms of the contract, the defendant's breach of the contract, and damages to the plaintiff resulting from the breach. *See Tuttle v. ANR Freight System, Inc.*, 797 P.2d 825, 827 (Colo. Ct. App. 1990) (*citing Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo. 1987)). James argues that Troxler fails to state a claim because, under Colorado law, non-compete agreements are void *ab initio*.[5]

---

[5] James also argues that the contract is invalid under North Carolina law because it is adhesionary and/or unconscionable and/or because it is not supported by consideration. These arguments merit little discussion. There is nothing before the Court that suggests that James was unsophisticated in these matters or that the agreement was so one-sided as to shock the conscience or deny James the opportunity for a meaningful choice. James had viable alternatives under the Stay Letter and was provided ample time to consider the terms and consult with an attorney, and in fact took twelve days to consider the agreement before signing it. That Troxler has a larger net value does not, standing alone, demonstrate that Troxler exerted overweening bargaining power.

14

Case 1:05-cv-00052-WLO   Document 25   Filed 10/19/05   Page 14 of 18

As previously noted, § 8-2-113(2) of the relevant Colorado statute provides:

> Any covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void, but this subsection (2) shall not apply to (a) Any contract for the purchase and sale of a business or the assets of a business; (b) Any contract for the protection of trade secrets; (c) Any contractual provision providing for recovery of the expense of educating and training an employee who has served an employer for a period of less than two years; and (d) Executive and management personnel and officers and employees who constitute professional staff to executive and management personnel.

Colo. Rev. Stat. Ann. § 8-2-113(2) (1993). Violation of this statute is a misdemeanor offense punishable by fine and/or imprisonment. *Id.* § 8-2-115. Covenants not to compete are disfavored in Colorado and exceptions to the general rule are narrowly construed. *See Dresser Indus.*, 732 F.2d at 784; *Gold Messenger, Inc. v. McGuay*, 937 P.2d 907 (Colo. App. 1997). A covenant that fails to fall within one of the exceptions is "facially void, rather than voidable." *Mgmt. Recruiters of Boulder, Inc. v. Miller*, 762 P.2d 763, 765 (Colo. App. 1988).

Troxler maintains that the relevant agreement falls within exception (b) and/or (d) of § 8-2-113(2) and is therefore enforceable. As the employer resisting the policy against non-compete agreements, Troxler bears the burden of proving that one of these exceptions applies. *See Porter Indus., Inc. v. Higgins*, 680 P.2d 1339, 1341 (Colo. App. 1984).

Section (b) allows parties to enter into an agreement aimed at protecting trade secrets. Of course, any information Troxler wished to protect under this section must be a *bona fide* trade secret. Troxler alleges in its Complaint that it is informed and believes that "Mr.

15

James is using trade secret, proprietary and confidential information obtained during the course of his employment with Troxler to his benefit as an employee of OSCS." Compl. ¶ 13. Troxler does not allege any specifics about the trade secrets at issue. Although the Stay Letter *itself* does not involve trade secrets, one section the Stay Letter provides that "[e]xcept as your duties may require, you will neither directly nor indirectly exploit, disclose or use for yourself or for any other person or business entity any secret or confidential information, knowledge or data of or about Troxler or its business, or that of or about third parties generated by you or divulged to you during your employment with Troxler." *See* Compl., Ex. 1, Stay Letter ¶ 4. What constitutes a trade secret is a question of fact. *Network Telecomms., Inc. v. Boor-Crepeau*, 790 P.2d 901 (Colo. App. 1990). It is not for the Court to determine whether Troxler can prove this allegation. Neither is the Court in a position to address the reasonableness of the non-disclosure provision as it relates to trade secrets.

To the extent that Troxler alleges that James, its former employee, breached the Stay Letter by using trade secrets obtained during his employment, Troxler states a claim for relief. However, while the agreement not to disclose trade secrets may ultimately bind James, the "naked covenant not to compete cannot be validated by the insertion of a companion clause dealing with trade secrets" and, absent application of some other exception, will be invalid. *Cf. Dresser Indus.*, 732 F.2d at 788 (*citing Colorado Accounting Machines, Inc. v. Mergenthaler*, 44 Colo. App. 155, 609 P.2d 1125, 1126 (1980)).

16

Troxler argues that the covenant not to compete is valid because James was "professional staff to executive and management personnel," one situation in which covenants not to compete may be enforceable under § 8-2-113(2)(d). The management personnel exception applies to those employees who are "in charge" of the business and who act in an unsupervised manner. *See Atmel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789, 794 (Colo. App. 2001) (citations omitted). Technical employees and sales representatives such as James have readily been found not to fall within the category of "professional staff." *Id.*; *Colorado Supply Co. v. Stewart,* 797 P.2d 1303, 1305 (Colo. App. 1990). The Complaint is devoid of any allegation that suggests that James, a service technician in Colorado, falls within this category, and it is unlikely, based on the Court's consideration of the parties' arguments in the briefs and in open court, that the Complaint could be amended to allege such facts.

In sum, the Court finds that Colorado law applies to the claim for breach of the non-compete provisions of the Stay Letter, in spite of the parties' choice of North Carolina law in their agreement. This finding is based on Colorado's more significant relationship to the issues and because application of North Carolina law would violate a fundamental policy of Colorado, which has a materially greater interest in the particular issue before the Court. The Court further finds that while the portion of the contract seeking to protect Plaintiff's trade secrets may be valid and enforceable, the covenant not to compete is invalid and void

17

*ab initio* pursuant to Colorado law. The Court does not rule on the claims for tortious interference with contractual relations or for unfair and deceptive trade practices.

Conclusion

For the reasons set forth above, **IT IS RECOMMENDED** that Defendant's motion to dismiss for improper venue (Pleading No. 11) be denied and that Defendant's motion to dismiss for failure to state a claim (Pleading No. 9) be granted as it relates to the claim that James breached the covenant not to compete.

                                                   /s/ P. Trevor Sharp
                                          United States Magistrate Judge

Date: October 19, 2005